# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 5:22-CV-00144-KDB-DSC

| | |
|---|---|
| JOHN DOE, A MINOR BY HIS NATURAL FATHER AND GUARDIAN, JOE DOE, <br><br> Plaintiff, <br><br> v. <br><br> WILKES COUNTY SCHOOLS BOARD OF EDUCATION, <br><br> Defendants. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Defendant Wilkes County Schools Board of Education's Motion to Dismiss, Doc. 6, filed October 12, 2022.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u> as discussed below.

## PROCEDURAL AND FACTUAL BACKGROUND

Accepting the factual allegations of the Complaint as true, Plaintiff was a fifteen-year-old male enrolled in tenth grade at Wilkes Central High School. On April 22, 2021, Mr. Waugh, an Assistant Principal at the school, contacted Plaintiff's father via text message to inform him that his son had been involved in an accident. Plaintiff's father contacted the school and spoke with

1

an Assistant Principal, Ms. Johnson. Ms. Johnson summoned Plaintiff's father and advised that his son was not in trouble but had been the victim of an incident at school. Upon his arrival at the school, Plaintiff, his father and Ms. Johnson proceeded to Mr. Waugh's office. Plaintiff and his father were shown a video of an assault committed by a group of students.

The video depicted Plaintiff being held down against his will by five students as he frantically kicked and writhed. One student repeatedly attempted to shove the end of a broom handle into Plaintiff's rectum while he resisted. Other students either held him down or recorded the incident on their cell phones. No teachers, coaches, or other adults were present in the video. The video was subsequently shared numerous times on social media.

Upon viewing the video, Plaintiff stated that at first he thought they "were just playing with him until he found himself on the ground." Doc. 1 at 5. Dr. Stocks, the Principal, told the father that the boys were simply "horseplaying" and that he did not find any "malicious intent." Id. Plaintiff and his father were then taken into a room where he was forced to confront his attackers. Plaintiff's father declined to confront the students without their parents being present. Plaintiff did not complete the school day and has not returned since the assault. He has become withdrawn and distant, and no longer shows interest in his normal activities. Plaintiff and his father have relocated due to the consequences of the attack and harassment by one of the perpetrators. Despite being asked to do so and considering that the assailants were school athletes, Defendant never addressed the continued sharing of the video nor disciplined the students who perpetrated the assault. The five students were eventually charged with assault in state court.

Plaintiff alleges three causes of action: (1) Civil Rights Violation Under 42 U.S.C. § 1983 for Illegal and Unlawful Seizure; (2) Civil Rights Violation Under 42 U.S.C. § 1983 for

2

Case 5:22-cv-00144-KDB-SCR   Document 11   Filed 01/19/23   Page 2 of 10

Violation of Plaintiff's Substantive Due Process Rights; and (3) Title IX Violation Pursuant to 20 U.S.C. § 1681.

## II. DISCUSSION

1. **Standard of Review**

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior

era ... it does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### a. § 1983 Claims

Plaintiff asserts § 1983 claims against Defendant for civil rights violations. "A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. "Respondeat superior or vicarious liability will not attach under § 1983." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694–95 (1978)); see also Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). Rather, a plaintiff seeking to impose liability on a municipality for the constitutional torts of its employees under § 1983 must prove that some municipal "policy" or "custom" caused a deprivation of the plaintiff's rights. Monell, 436 U.S. at 694.

The Fourth Circuit has long recognized Monell and its progeny as requiring a plaintiff to adequately plead and prove the existence of an official policy or custom that proximately caused a deprivation of rights. Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009). The

4

identification of a specific municipal policy or custom is a threshold requirement. See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of Cmm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403–404 (1997) (citing Monell, 436 U.S. at 694). Furthermore, a plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404.

"Where a Plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405; see also City of Canton, 489 U.S. at 391–92.

In Carter v. Morris, 164 F.3d 215 (4th Cir. 1999), the Fourth Circuit identified four possible sources of "official policy or custom" giving rise to municipal liability: (1) "written ordinances and regulations;" (2) "affirmative decisions of individual policymaking officials;" (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of the citizens;" or (4) a practice "so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." Id. at 218 (quotations and citations omitted).

The allegations in Plaintiff's Complaint do not support a § 1983 Fourteenth or Fourth Amendment claim against Defendant. Plaintiff has not sufficiently alleged that an official policy, practice, or custom of institutional discrimination led to his injury. Rather, Plaintiff relies on

5

Defendant's "disregard" of its hazing, bullying, and harassment policies in this singular event. But there is a glaring difference between a municipality establishing a discriminatory policy and declining to apply a policy to a single incident. Plaintiff does not allege that Defendant customarily disregards its policies concerning student conduct. He has failed to meet the threshold requirement of identifying a specific municipal custom or policy that proximately caused the deprivation of rights. Thus, Plaintiff has failed to adequately plead, other than conclusions, that Defendant had "a practice that was 'so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. For those reasons, the undersigned respectfully recommends that the Motion to Dismiss Plaintiff's § 1983 claims against Defendant be granted.

### b. Title IX Claim

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In Davis v. Monroe Cnty. Bd. of Educ., the Supreme Court found that Title IX's prohibition on sex-based discrimination encompasses student-on-student sexual harassment where the school "is deliberately indifferent to known acts of student-on-student harassment and the harasser is under the school's disciplinary authority." 526 U.S. 629, 646–47 (1999). The Court held that "funding recipients are properly liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Id. at 650. To prove a Title IX claim on the basis of student-on-student sexual harassment, Plaintiff must show: (1) he was a student at an educational institution receiving federal funds; (2) he was subjected to harassment based upon his sex; (3) the harassment

was so severe, pervasive, and objectively offensive that it created a hostile or abusive educational environment; and (4) the educational institution had actual knowledge of the harassment but was deliberately indifferent. See Davis, 526 U.S. at 650; Rouse v. Duke Univ., 535 F. App'x 289, 293 n.* (4th Cir. 2013) (per curiam) (unpublished); Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007) (en banc). A school acts with deliberate indifference where its "response to the [alleged] harassment or lack [of such response] is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648.

The Fourth Circuit requires that an institution have actual knowledge of harassment against a plaintiff. Alleged knowledge of prior acts of sexual harassment against other students is insufficient to establish liability. Baynard v. Malone, 268 F.3d 228, 238 (4th Cir. 2001); see also Facchetti v. Bridgewater Coll., 175 F. Supp.3d 627, 639 (W.D. Va. 2016) ("[Plaintiff] cites to a number of cases for the proposition that prior harassing conduct need not be 'Plaintiff specific' or involve the same perpetrator that assaulted the Plaintiff for a university's deliberate indifference to prior complaints to result in Title IX liability.... In the Fourth Circuit, though, there is a requirement that the defendant have actual notice of harassment against the plaintiff."). A university's knowledge of prior sexual misconduct by the same assailant with other students or of potential abuse is insufficient to establish a Title IX claim. Id.

Accepting the factual allegations as true, Defendant was aware of the sexual assault and existence of the video. His Complaint alleges students continued to share the video after he and his father met with school administrators. The video depicted other students watching and recording the incident. Armed with this knowledge, Defendant did nothing to restrict the publication of the video by students on social media. Plaintiff's allegations that Defendant had actual knowledge of the assault and dissemination of the video are sufficient to show deliberate

7

indifference and withstand dismissal under Rule 12(b)(6). For those reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title IX claim be denied.

### c. Qualified Immunity

Defendant argues that it is entitled to qualified immunity because it acted reasonably in handling and reporting the investigation. A defendant's actions are assessed from the perspective of a "reasonable [administrator] possessing the same information." Gallimore v. Henrico Cnty. Sch. Bd., 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (citing Anderson v. Creighton, 483 U.S. 641 (1987)). A defendant's motives are irrelevant to the qualified immunity inquiry. Anderson v. Creighton, 438 U.S. 635, 641 (1987). The Supreme Court has held that qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The Fourth Circuit Court has held:

> "Qualified immunity shields **government officials performing discretionary functions from personal-capacity liability** for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 306 (4th Cir. 2006) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)) (internal quotation marks omitted). Officials will receive immunity unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was "clearly established" such that a reasonable person would have known his acts or omissions violated that right. Id. see also Saucier v. Katz, 533 U.S. 194, 201 (2001), modified by Pearson v. Callahan, 555 U.S. 223 (2009) (setting up this two-pronged test).

Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (emphasis added).

Defendant is not entitled to qualified immunity here. Plaintiff has not sued any of the school administrators in their personal capacities. The undersigned respectfully recommends that Defendant's Motion to Dismiss based upon qualified immunity be denied.

## 2. **Defendant's Motion to Dismiss Under Rules 12(b)(1), 12(b)(2), and 12(b)(3)**

Defendant's Motion to Dismiss under Rules 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, and 12(b)(3) for lack of venue are unfounded. Defendant argues that Plaintiff's claims under federal law are meritless, and thus dismissal is proper. But for the reasons stated above, Plaintiff has a valid claim under Title IX. The undersigned respectfully recommends that Defendant's Motion to Dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(3) be denied.

## III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's Motion to Dismiss, Doc. 6, be **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to Plaintiff's § 1983 claims against Defendant and **DENIED** in all other respects.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845–46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties <u>and to the Honorable Kenneth D. Bell</u>.

**SO ORDERED**.

Signed: January 19, 2023

David S. Cayer
United States Magistrate Judge